778 So.2d 404 (2001)
NATIONAL INDEMNITY COMPANY OF THE SOUTH, Appellant,
v.
CONSOLIDATED INSURANCE SERVICES and Symons International Group, Inc., Greater Bethel Christian School, Forest Williams, Nakishia Freeman, Clarence Freeman, her husband, and Elizabeth Davis, Appellees.
No. 4D99-4353.
District Court of Appeal of Florida, Fourth District.
January 24, 2001.
Rehearing Denied March 16, 2001.
*406 G. Bart Billbrough of Cole White & Billbrough, P.A., Miami, for appellant.
Gerald E. Rosser of Lambdin & Rosser, P.A., Plantation, for Appellees-Consolidated Insurance Services and Symons International Group, Inc.
WARNER, C.J.
This appeal arises from a declaratory action to determine whether an insurance policy issued by appellant, National Indemnity Company ("NIC"), to Greater Bethel Christian School was in full force and effect on the date of an automobile accident involving one of the school's vehicles. The declaratory action was brought by the insurance broker, who received the renewal premium, and the broker's errors and omissions carrier. The trial court entered summary judgment for the broker, declaring that NIC's policy was in full force and effect on the date of the accident. Because there was no material issue of fact as to whether NIC held out the broker, Consolidated, as its agent, either expressly or through other indicia of agency, we reverse the summary judgment as to Consolidated and remand for entry of judgment in favor of NIC.
NIC had issued a commercial liability insurance policy to Greater Bethel Christian School for its vehicles. The policy was scheduled to terminate in August 1995. Bethel's agent, Consolidated, procured the policy. Prior to the policy's termination date, Swett Insurance Managers, an agent for NIC, sent Bethel a nonrenewal notice on May 3, 1995, informing the school that the policy was about to expire. The letter from Swett informed Bethel that NIC would consider a renewal upon receipt and review of a renewal application. Bethel was told to contact "your agent," which was listed in the letter as Consolidated, if Bethel wanted a renewal. No request for a premium payment was made in this letter.
However, on June 30, 1995, a notice of non-renewal was sent to Bethel by Swett noting that the policy was canceled effective August 19, 1995. The notice stated that the policy "will NOT be renewed for the reasons stated in the Important Notices section." In that section, the reasons for cancellation were "underwriting reasons-updated application, driver list, no loss letter from 6/10/95 to 6/23/95, exclusion endorsement on Wetherbee and Nelson."
On August 7, 1995, Bethel delivered a check to Consolidated, made payable to Consolidated, for the insurance premium (although there is nothing in the record to indicate how the amount was calculated). The record does not reveal whether Bethel completed a renewal application at that time. However, Consolidated never forwarded this amount to NIC nor Swett nor sent them a completed application. Therefore, the policy lapsed.
On October 26, 1995, the president of Consolidated contacted Crump Insurance Service of Florida, another general agent for NIC, regarding the replacement of the policy for Bethel. After receipt of a completed application and initial premium payment, Crump issued an insurance binder, effective from November 14, 1995 to December 14, 1995. Prior to issuing the policy, NIC discovered that it had previously insured Bethel. NIC therefore required Crump to obtain a statement from the insured that there were no losses from the time the prior policy expired until the inception date of the new policy. In this case, there had been an accident on October 30, 1995. NIC disclaimed coverage for that accident.
After NIC refused coverage, the president of Consolidated wrote to Bethel to explain what had occurred:
I am writing you this letter to notify you, as the agent for Greater Bethel, *407 that I have sent a claim to my errors & omissions insurance. I regret this for the church had a premium in August, and I had a[n] employee that had misplaced the application to renew the policy, no. 74 AP-1211818-8/19/95 to 8/19/96 with National Indemnity. I could not locate her, she was employed by the agency while I was taking treatments.
... I neglected to renew this policy on 8/19/95, I wrote the coverage 11/14/95.
Consolidated and its errors and omissions carrier sued for declaratory relief, claiming that NIC was obligated to cover the accident because Consolidated was NIC's agent and accepted the premium. Consolidated relies on the doctrine of apparent agency, and that its receipt of the premium from Bethel bound NIC to renew the policy. There is no claim of actual agency.
While, as a general rule, an insurance broker is an agent for the insured, see Boulton Agency, Inc. v. Phoenix Worldwide Indus., Inc., 698 So.2d 1248, 1250 (Fla. 3d DCA 1997), an insurance company may be bound by the acts of a broker if the principal (i.e. the insurer) creates the appearance of an agency relationship in the broker. See Warren v. Dep't of Admin., 554 So.2d 568, 571 (Fla. 5th DCA 1989). In order to establish apparent agency, three elements must be present: (1) a representation by the principal; (2) reliance on that representation by a third person (the insured); and (3) detriment to the third party from such reliance. See Almerico v. RLI Ins. Co., 716 So.2d 774, 777 (Fla.1998)[1]. Indicia of agency may exist where the insurance company gives the broker blank forms, blank applications, promotional materials, or other supplies used to solicit, negotiate, and effectuate contracts of insurance. See id.
In the instant case, the issue to be determined is whether on this record there was any evidence that Consolidated was the apparent agent for NIC, so that acceptance of the premium payment bound NIC to cover Bethel, the insured. NIC did not make any representation itself to Bethel suggesting an agency relationship. Instead, its general agent, Swett, informed Bethel of the need to fill out a renewal application and pay the premium to Consolidated; however, the letter referred to Consolidated as Bethel's agent, and it warned that renewal was subject to receipt of a fully completed application received by Swett, not Consolidated. That is insufficient to constitute a representation by the insurer of an agency relationship. Swett's second communication with Bethel informed it unequivocally that the policy was canceled for underwriting reasons, including the failure to provide a completed renewal application. An affidavit from a Swett officer states that Consolidated was not provided with promotional or advertising material, nor was it provided with "any letterhead, stationery, brochures, binder forms, signs or other materials evidencing any relationship with [NIC]." (Emphasis added). No counter-affidavits were filed by Consolidated.
The main thrust of appellees' argument in their brief is that because Consolidated must have had a blank application from NIC which Bethel filled out, that alone is sufficient indicia of agency to withstand NIC's motion for summary judgment. Although the letter to Bethel from Consolidated's president states that an employee misplaced the application, no affidavit from Bethel or Consolidated or other sworn proof was offered to corroborate that allegation or that Consolidated was *408 supplied applications in blank. In fact, the Swett affidavit states to the contrary when it says Consolidated was not supplied with any materials evidencing any relationship with NIC. When the movant produces sufficient evidence to support summary judgment, it is the opponent's burden to come forward with either counter-evidence or justifiable inferences from the evidence presented. See Corbitt v. Kuruvilla, 745 So.2d 545, 548 (Fla. 4th DCA 1999).
The only fact that Consolidated relied upon to establish apparent agency was the payment of the renewal premium to Consolidated. However, NIC had never demanded a premium payment, nor calculated what it would be, because it had never received the renewal application form. Information requested in that application would be material to the premium charged. There being no material issues of fact, the trial court should have entered summary judgment in favor of NIC.
In its second point, NIC argues that the trial court erred in striking its offer of settlement made pursuant to section 768.79, Florida Statutes (1999). The trial court determined that the declaratory judgment was not a civil action for damages within the meaning of the statute. We agree. We have looked to whether the "real issue" is one for damages or declaratory relief. See Nelson v. Marine Group of Palm Beach, Inc., 677 So.2d 998 (Fla. 4th DCA 1996). The "real issue" in this case is insurance coverage for an underlying tort action. No money damages or payment of money is directly requested in this suit, as it was in Nelson, and we conclude that the trial court's ruling was correct.
We reverse the final summary judgment and remand for entry of a judgment in favor of National Indemnity.
HAZOURI, J., and THOMAS H. BARKDULL, III, Associate Judge, concur.
NOTES
[1] We first question whether Consolidated itself has standing to assert the doctrine of apparent agency in a claim against NIC. Consolidated is not the insured and did not rely on any representation of NIC to its detriment. NIC raised the possibility that Consolidated lacked standing to bring this action only in a footnote and did not argue it as a ground for reversal. We therefore express no further opinion on this point, as we decide this case on other grounds.